**ESSEX COUNTY JAIL INMATES,**
**et al., Plaintiffs,**

v.

**Nicholas AMATO, County Executive, et als., and William H. Fauver, Commissioner, New Jersey Department of Corrections, Defendants.**

**Civ. A. No. 82–1945.**

United States District Court,
D. New Jersey.

Nov. 20, 1989.

T. Gary Mitchell, Dept. of Public Advocate, Trenton, N.J., for plaintiffs.

Joseph T. Maloney, Deputy Atty. Gen., Trenton, N.J., for Fauver.

## OPINION

HAROLD A. ACKERMAN, District Judge.

This litigation has had a painful and protracted history. This class action has been brought on behalf of the inmates of the Essex County jail against various Essex County officials and the New Jersey Commissioner of Corrections. Plaintiffs have sought relief from overcrowding and other objectionable conditions of confinement which have arisen as a result of the overcrowding. The parties come before the Court now on plaintiffs' application for an order to show cause as to why the defendants should not be held in contempt for violating the terms of the Third Supplemental Consent Order ("SCO3"), which is an order of this Court.

I note that as an initial matter, the fact that SCO3 is a consent decree does nothing to minimize the obligation of the parties to adhere to the Court's decision. In fact, in stipulating to the terms under which sanctions are to be imposed, the county unequivocally acknowledged that conditions at the Essex County jail and annex are unconstitutional and that the remedies which plaintiffs seek to have imposed are appropriate ones. In an analogous situation, the United States Court of Appeals for the Second Circuit found that

> The respect due the federal judgment is not lessened because the judgment was entered by consent. The plaintiff's suit alleged a denial of their constitutional rights. When the defendants chose to consent to a judgment, rather than have the district court adjudicate the merits of the plaintiffs' claims the result was a fully enforceable federal judgment that overrides any conflicting state law or state court order. The strong policy en-

couraging the settlement of cases requires that the terms of a consent judgment, once approved by a federal court, be respected as fully as a judgment after trial.

*Badgley v. Santacroce*, 800 F.2d 33, 38 (2nd Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). This Appellate Court observance informs my decision today. Before detailing that decision, it is necessary to restate the action's background and the nature of the current application before me.

## BACKGROUND

In 1982, pursuant to Federal Rule of Civil Procedure 53, I appointed two special masters to whom I referred this matter for an evaluation of the conditions at the Essex County Jail. Their reports as well as the parties' stipulations reveal a facility that was, and still is, taxed to the breaking point. For nearly every day of 1982 to the present, the County defendants have housed substantially more than the 594-inmate cap. Overcrowding has caused these inmates to be housed in the dayrooms and has cut into the defendants' ability to provide the hour of exercise mandated by the terms of the consent order. Smoke detectors and alarms are inoperable. Mattresses are unsanitary and no longer fire-retardant, they are often cracked and torn. Inmates are not receiving weekend visits of at least 20 minutes in duration. A number of inmates fail to receive a physical examination within 72 hours of admission, a situation which also leads to housing of these unexamined inmates with the general population. Reliable logs of housing assignments are not maintained. Consequently, it is often difficult, if not impossible, to find inmates once they have entered the system or for the jail to receive accurate, timely information as to their bail status.

The initial agreement, which was presented to this Court on October 18, 1982 set a maximum inmate capacity of 594 effective July 1 1983. It is this population cap agreed to over six years ago which has still not been met, and which is a focus of today's proceeding. In the 1982 accord, the County also agreed to provide certain services pertaining to the conditions indicated above.

On February 4, 1985, the County defendants, admitting that the facilities and services were "insufficient to meet the terms" of the original consent judgment, was given until May 1, 1985 to develop and implement a plan to provide additional housing and improve services at the jail.

As a result of the County's failure to comply with the terms of these orders, and after several days of hearings, the parties reached an agreement which was ultimately incorporated into a second supplemental consent order, entered on April 27, 1987. The County was again given time, until January 1, 1988, to meet the 594-inmate population cap. Under the agreement, the County agreed that violations of the cap would trigger automatic sanctions.

In 1987, the plaintiffs asserted that the defendants had yet to comply with the above-described orders. After further hearings and an on-site inspection of the Essex County facility by the special masters (but prior to the Court's decision regarding the masters' July 26, 1988 recommendation that the County defendants be held in contempt and sanctioned), the parties entered into the Third Supplemental Consent Order which was filed on December 27, 1988. In that order, as in its two forerunners, the County defendants acknowledged that "inmate housing and services continue to be insufficient to meet the terms of the previous consent orders."

In light of this admission, the plaintiffs agreed to defer prosecution of the contempt application to permit the County to implement measures to finally reduce the population to 594-inmates and to achieve substantial compliance with the other provisions of the prior orders of this Court. SCO3 specifically reserved plaintiffs' right to pursue a contempt application and seek sanctions if the jail population was not reduced to 700 inmates by February 15, 1989, 650 inmates by April 15, 1989 and 594 inmates by June 1, 1989. The precise language is as follows:

Counsel for the plaintiff class agrees to defer prosecution of the application on behalf of plaintiffs to have the County defendants held in contempt for a period commencing on December 1, 1988 and ending on May 31, 1989, in order to permit the County defendants to implement measures as described above which the County defendants believe will result in a substantial and swift reduction of the County Jail population to 594 and which similarly will permit the County defendants to achieve substantial compliance with other provisions of the prior Orders of the Court; provided, however, that within the period referenced above plaintiffs' counsel shall be permitted to resume prosecution of the contempt application in the manner provided by this Order and to seek sanctions as authorized by this Order if the total population by February 15, 1989, is not reduced to or thereafter exceeds 700 inmates, or if the total jail population by April 15, 1989, is not reduced to or thereafter exceeds 650 inmates, or if the total jail population by June 1, 1989, is not reduced to or thereafter exceeds 594 inmates.

SCO3 ¶ 1.

The County defendants, recognizing that promises to the plaintiff class have been "long delayed" and would be further delayed by SCO3, were "on notice" that alternatives to the jail initiative, the County's own program to reduce overcrowding, must be contemplated in order to reach and maintain the population cap. *See* ¶ 2–4 SCO3. The County defendants specifically recognized that "prompt proceedings to impose and compel payment of sanctions" would ensue if the County's noncompliance was not rectified.

In fact, SCO3 sets forth a specific agenda regarding fines, and the County defendants waived any right to be heard on whether or not sanctions should be imposed, except in situations where the County was faced with an emergency such as a fire, a disaster, or a riot. Specifically excluded from SCO3 are any fluctuations in the inmate population associated with, e.g., criminal justice practices, prosecutional policies, law enforcement activities, changes in sentencing plans, or the reduction or termination of County program concerning pretrial release or noncustodial disposition alternatives. The County defendants also agreed not to contest the specific figures that the masters recommend. *See* ¶ 20 SCO3.

As indicated above, the 594–inmate population cap was to be achieved through a series of interim reductions. In April 1989, the masters filed a report and recommendation addressed to plaintiff's allegations that the County had still not fulfilled the population or recreation requirements—in other words, that the terms of the SCO3 were not being met. On May 10, 1989, this Court found that "defendants had failed to meet the timetable for the population reduction" and pursuant to ¶ 20 of SCO3 the Court imposed sanctions. At that time I stated, "I find that sanctions are particularly appropriate in light of defendants' repeated violation of the orders of the court" (p. 17 Opinion). As defendants and plaintiffs both know, the sanction money has been used to create a bail fund program pursuant to the terms of ¶ 22(b) of SCO3.

On May 10, I declined to impose sanctions for the defendants' failure to comply with the recreation requirements of the December 1988 order, *see* ¶ 19b(1) & (2) of the SCO3 which states,

b. *Exercise and recreation*

(1) *Schedule*—By Feb. 1, 1989, the County shall submit to plaintiffs' counsel and the Special Masters a proposed gym schedule that will fulfill its obligations under prior orders to provide each inmate at the jail with access to an exercise and recreation area for a minimum of one hour each day. The County shall take all steps necessary to implement this schedule so that inmates shall receive the required daily opportunity for exercise by April 15, 1989, including but not limited to physical construction of facilities, acquisition of equipment, and hiring of additional staff.

(2) *Supplemental Exercise Equipment Outside Dayrooms*—Within 30 days of the date of this agreement, the

County shall obtain the items of exercise equipment previously required by paragraph 12(c)(3) of the SCO1.

I took judicial notice at that time of the County's failure to comply with the recreation schedule to which both parties had agreed. In so doing, I stated that "failure to obtain the equipment within 30 days may result in sanctions." I further ordered defendants to begin to comply with the gym schedule immediately and to "establish a record-keeping system for monitoring availability and usage of the recreation program" (*see* pgs. 19 & 20 of Order May 10). I concluded my discussion of the recreation issue by saying that, "failure to establish such a system by June 1, 1989 *will* result in sanctions" (p. 20 opinion, emphasis added).

### THE PENDING APPLICATION

Regrettably, the matter is once again before this Court upon plaintiffs' Application for an Order to Show Cause as to why the most recent report of the masters regarding the population at the facility and the provision of recreational opportunities should not be adopted by the Court. The masters' report, dated September 19, 1989, was filed in response to plaintiff's application to hold the County and State defendants in contempt.

The masters found that the County's violations of the Consent Order were "massive," and that defendants have confronted this Court with virtually the same kind of noncompliance with the terms of the SCO3 that necessitated my May 10th decision and the concomitant sanctions.

In their report, the masters observed that the County defendants have failed to meet the population reduction, both with regard to the overall inmate population and the population within certain housing units. Further, the masters reported that the defendants have not contended that this failure is due to an emergency situation. In short, per the masters, defendants have failed to identify any circumstances that would constitute a defense to this breach.

According to the masters, the parties have stipulated to the fact that the County

defendants have violated the 594–inmate population cap every single day from June 1, 1989 through October 13, 1989 for a total of 14,768 prisoner days over the cap. *See* ¶ 6 of SCO3 which states

> for nearly every day of 1988 to the present, the County defendants have housed substantially more than 594 inmates at the E.C.J.

As a result, the masters have recommended that the defendants be held in contempt and fined a total of $1,905,300.00. *See* pages 9 and 10 of the masters' report. The figures in the masters report run only through August 31, 1989. However, at our October 10, 1989 hearing, the parties stipulated to the figures this Court has used today.

The parties also stipulated to figures showing that from June 1, 1989 through October 13, 1989 the County exceeded the maximum capacity limits fixed for individual housing units in ¶ 10 of the 1982 consent judgment. The County exceeded the individual housing caps for a total of 4,285 prisoner days over cap and the masters recommended sanctions of $428,500.00.

The masters further reported that during the June 1, 1989 through September 30, 1989 period, there were 76,069 occasions when inmates were denied their daily hour-long opportunity for recreation, a direct violation of ¶ 19b(1) of SCO3. See excerpt *supra*. The masters further found that the County had failed to install tier-level recreation equipment, which is also mandated by ¶ 19b(2) of SCO3. For these deficiencies, the masters also recommended the imposition of sanctions. The masters suggested a fine of $20.00 per day for every inmate who was denied a recreational hour for a total fine of $1,521,380.00. The plaintiffs have recommended a sanction of $100.00 per inmate per recreation hour denied. I will discuss this recommendation *infra*.

The masters suggested that pursuant to ¶ 20(b) the monies from the population fines be placed in the bail fund. At this point, I might add that the masters' calculations regarding population fines was based upon a figure of $100.00 per day per

inmate, which was the sum that the parties agreed upon in the event of a population violation. *See* Addendum to SCO3 and ¶ 20(d) of SCO3 which provides that

> The parties to this case having agreed in ¶ 20(d) of SCO3 that the special masters shall set an amount of a fine as a population sanction in the event of certain violations of said SCO3, and this Court having reviewed and approved said Third Supplemental Consent Order; and the masters having recommended the Supplemental Consent Order, and the masters having recommended the amount of $100.00 per prisoner per day as the proper sanction;
>
> IT IS on this 27th day of December 19, 1988,
>
> ORDERED that in the event of violations of the SCO3 as set forth therein in ¶ 20, the sanction to be imposed, is referred to in ¶ 20d, shall be calculated at the rate of $100.00 per prisoner per day.

The masters have also suggested that an automatic system whereby the fines are calculated, collected, and paid into the bail fund on a weekly basis is advisable at this juncture.

The masters have also recommended that the County defendants' recreational fine of $1,521,380.00 be deposited into an interest bearing account to be known as the Recreation Improvement Fund. Monies from that fund would be used to hire an expert who would research and report on recreational opportunities at the jail and how best to effectuate the requirement that every inmate be afforded one hour of recreation per day. The masters further suggested that any future fines be calculated on a weekly basis and paid automatically into the Recreation Improvement Fund.

For their part, plaintiffs agree with many of the masters' recommendations. Plaintiffs ask this Court to adopt the masters' contempt findings and population sanctions. With regard to recreation, the plaintiffs seek adoption of the masters' findings that the County has failed to provide an opportunity for one hour of exercise per inmate and that the County has failed to install and maintain the supplemental equipment. Plaintiffs seek some modification in the recreational fines—plaintiffs ask for a $100.00 fine per inmate for the failure to provide the daily hour of recreation, with some small portion of that fine to be designated as compensatory. Plaintiffs further request that a $20.00 fine per inmate per day be instituted for defendants' failure to provide and maintain supplemental exercise equipment. Again, plaintiffs ask that a small portion of that fine be designated as compensatory. Plaintiffs reiterate their request that the County maintain records to identify which inmates were provided an opportunity for gym use and which inmates were not.

In response to these requests, the County defendants have argued that they should not be held in contempt or sanctioned in light of the establishment of the bail fund. Defendants further assert that compliance is impossible given the expansion of the inmate population. With respect to the issue of the exercise equipment and recreation, the County defendants have asserted that they have made a good faith effort to comply with both the consent judgment and this Court's order and thus the County can not be held liable.

## DISCUSSION

Rule 53(e)(2) of the Federal Rules of Civil Procedure states in part that

> In an action to be tried without a jury the Court shall accept the master's findings of facts unless clearly erroneous.... The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

*See Kyriazi v. Western Electric Co.,* 647 F.2d 388, 396 (3d Cir.1981). I shall review the Masters' report and recommendation that I hold the defendants in contempt and impose sanctions with this standard in mind and in light of the developments since the presentation of their report to this Court.

My authority to impose sanctions arises from two separate sources. First, I may impose sanctions as an act of enforcing the agreement between the plaintiffs

and County defendants. *See Local 93 v. City of Cleveland,* 478 U.S. 501, 106 S.Ct. 3063, 3076, 92 L.Ed.2d 405 (1986). When viewed as such, the decision to impose sanctions is simply a matter of construing and apply the agreement. *See, e.g., Sansom Committee by Cook v. Lynn,* 735 F.2d 1535, 1539 (3d Cir.), *cert. denied, sub nom., Trustees of the University of Pennsylvania v. Sansom Committee,* 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 358 (1984). Second, an imposition of sanctions can be viewed as a penalty for contempt for failure to abide by a judgment, signed by the Court—a judgment which establish clear norms of conduct for the County defendants and notice of penalties for nonperformance. *See Inmates of Allegheny County Jail v. Wecht,* 754 F.2d 120, 128–29 (3d Cir.1985), *citing, inter alia, Granny Goose Foods Inc. v. Local 70,* 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). In this case, I find that the parties have entered into an agreement which provides that the violation of its terms shall result in the imposition of sanctions. Moreover, as their agreement is embodied in an order of this Court, violation of the order triggers the Court's authority to impose sanctions for noncompliance.

In upholding the imposition of sanctions and, ultimately, the district court's order that a plan for the construction of a new jail facility be provided, the Third Circuit, in an opinion written by Chief Judge Gibbons observed that, "we made it clear, however, that the district court had the power to order such a plan." *Inmates of Allegheny County Jail v. Wecht,* 874 F.2d 147, 152 (3d Cir.1989). In grounding this authority, Chief Judge Gibbons observed that,

> orders to responsible public officials to prepare and submit plans for remedying constitutional violations are not uncommon.... [i]n the prisoner context the courts have the authority to order local officials to take costly measures to cure violations.

*Wecht, supra,* at 150. Moreover, the Chief Judge opined that "when the totality of conditions in a jail violates the constitution a district court need not confine itself to the elimination of specific conditions.

Rather, the nature of the overall violation determines the permissible scope of an effective remedy." *Wecht, supra,* at 153 and cases cited therein. Hence, my authority to impose sanctions and to issue an order to remedy the violations is firmly established in the law of this Circuit, as well the parties own consensual agreement which was incorporated into the order of this Court.

In light of their failure to maintain the agreed upon cap, the consent order provides that such noncompliance "will result in prompt proceedings to impose and compel payment of sanctions ..." *See* ¶ 2 of the SCO3. Relatedly, ¶ 20 provides that

> The County defendants shall have until the dates set forth ... [above] to reduce the population of the jail to the interim levels therein specified and to reach the ultimate maximum capacity of 594 inmates.... Any failure to meet those requirements or thereafter maintain the jail population at 594 or less inmates, or any failure thereafter to adhere to the housing unit capacity limits, shall result in the following:
>
> a. If the population of the jail is not 594 or less, sanctions shall, as previously agreed by the County defendants in Paragraph 3 of the [second supplemental consent order], attach automatically to any continued noncompliance with the 594 capacity limit....
>
> c. ... the sanctions authorize[d] ... for violations of the 594 capacity limit ... shall be based on a daily amount for each inmate confined in excess of the overall 594 capacity....

Hence, under the terms of the agreement, automatic daily sanctions are to be imposed for each inmate housed at the facility over the 594–inmate cap in the amount of $100 per inmate per day. *See* the addendum to the supplemental consent order.

In my decision of May 10th I found that,

> Sanctions are particularly appropriate in light of defendants' repeated violation of the order of this court. Thus, for violations of the cap and to deter future disobeyance of orders of this court I shall sanction the county.

*See* p. 17, May 10th Opinion. Defendants continue to repeatedly violate the orders of this Court and the terms of the consent judgment, despite my hope that the May 10th sanctions would deter the County from future violations. The County has, by its own admission, housed inmates in excess of the population count and once again violated the law. Thus, for violations of the cap on population both in overall inmate population and in specific housing areas, I find the County in violation and I shall sanction them according to the terms of the SCO3. The stipulated figures that run through October 13, 1989 result in a total fine of $1,905,300.00 with $1,476,800.00 due to the overall population violation and $428,500.00 ascribed to the specific housing violations. (*See* attached figures, Addendum 1 and 2 to this opinion).

■■■■ The County's defense to their acknowledged violation of the consent judgment of this Court simply cannot stand. In the first place, good faith verbal efforts to rectify the unconstitutional conditions, do not nullify defendants' persistent violation of a court order and their continued exposure of the plaintiff class to constitutionally infirm conditions.[1] In this regard, courts have found that even commencing construction of a new jail facility which, to a great degree, will establish compliance with the goals of an overcrowding stipulation does not warrant a modification in the finding that the current facility is inadequate and can no longer accept prisoners. In *Morales Feliciano v. Hernandez–Colon*, 672 F.Supp. 627, 637 (D.P.R.1987), the district court found that

> Sincere thorough and effective efforts to comply with court orders are nothing more than what the law expects. The attempt to transform these efforts into relief from the underlying duty is unseemly.

*See also Inmates of Allegheny County Jail v. Wecht*, 573 F.Supp. 454 (W.D.Pa. 1983). At issue in this matter is nothing resembling the partially completed construction of a new facility described in *Feliciano*. Instead, defendants urge that the court's own prior finding of contempt nullifies their continued noncompliance and that the bail fund exempts defendants from the independent need to maintain the population at or below cap.

The sanctions out of which the bail fund grew are drawn from a prior contempt finding. As such, they are not directed towards the County's subsequent violation of SCO3. Moreover, this court recognizes that the bail fund is a stop-gap measure. In this regard, Judge Cohill, in imposing a somewhat similar release program, wrote

> So long as this emergency exists an arbitrary formula for the release of prisoners will have to be utilized ... In no way should this opinion and order be construed by the defendants as reason for them to relax their efforts. It is the duty of the County to house prisoners, and any release of prisoners should be recognized as a final, albeit temporary, effort to ameliorate the situation, not as a solution to the problem.

*Inmates v. Wecht*, 573 F.Supp. at 57. Here, too the Court will tolerate no relaxation on the County's part.

■■■ Defendants' representation that compliance with the court order and the terms of their own consensual agreement is literally impossible fails to satisfy the requirements for impossibility as they are defined in the relevant caselaw and portions of the consent decree. In upholding sanctions against the *Allegheny County* defendants, the appellate court addressed defendants' contention that they were unable to comply with the terms of the order as follows,

---

[1] In this regard, it is worth remembering that included among the plaintiff class are pretrial detainees, and that the law imposes a higher standard of conditions on those incarcerees who are, by the terms of the United States Constitution, presumed innocent. *See Bell v. Wolfish,* 441 U.S. 520, 535–40, 99 S.Ct. 1861, 1871–75, 60 L.Ed.2d 447 (1978); *Inmates v. Allegheny County v. Wecht,* 874 F.2d 147 at 153; *Union County Jail Inmates v. Scanlon,* 537 F.Supp. 993, 1002 (D.N.J.1982), *rev'd on other grounds,* 713 F.2d 984 (3d Cir.1983), *cert. denied,* 467 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984).

The ... defense of inability to comply, however, refers to physical impossibility beyond the control of the alleged contention. The orders in question were directed to all the defendants, and the suggestion that it was physically impossible for Allegheny County to obey the order in the respects in which they were held to be in contempt is sophistical. The County officials simply chose to take no steps to provide the warden and his staff with the wherewithal to comply. Such conduct exposes the party responsible to contempt.

*Wecht, supra,* at 152, *citing Halderman v. Pennhurst State School & Hospital,* 673 F.2d 628, 639 (3rd Cir.1982). Here, too, defendants are not physically barred from meeting their obligations. Rather, through inactivity they have blatantly chosen to remain in contempt of a court order and to ignore the plain language of their own agreement.

SCO3 explicitly defines what constitutes an emergency and hence a permissible violation of the population caps. There has been no such emergency here, nor any allegation of one on the part of defendants. As the SCO3 set forth

> For an emergency to constitute the basis for mitigation of sanctions under this paragraph, the warden shall provide immediate telephone notice to plaintiffs' counsel of the emergency declared. With 24 hours thereafter, written notice shall be provided, setting forth the reason for the emergency, its expected duration, the total number of inmates housed at the E.C.J., the number of inmates added by the emergency to the E.C.J., the locations in which these inmates have been housed, and the expected impact on conditions, services or programs available to other inmates.

¶ 20(f)(2) SCO3. The defendants have not only offered any nonwaived defense to their violation of the population requirements of the consent order, but also have not observed any of the applicable procedures.

The record in this case demonstrates that despite all the written, consensual undertakings on the part of the County defendants, they have not yet spent a single dime towards alleviating the critical housing problem facing the Essex County Jail facility, which defendants themselves recognize unequivocally and which they themselves must seek to correct. There has been considerable posturing on the part of County defendants, but there has been no meaningful action. County defendants have referred to the proposed construction of a new facility, but any new facility is at least 4 or 5 years down the road. No action has been taken regarding the manifest problems facing the county today. As pointed out earlier in this Opinion, the substantial fines that are being levied today can and must be laid at the feet of the County defendants—they made the promises; they did not keep them.

It is the degree and constancy of the overpopulation violations that have led the special masters to suggest that a self-executing system be implemented, whereby any population over cap automatically triggers the appropriate fine. At this time, I am reluctant to impose such a system; although past history might indicate that it would be a prudent choice. I prefer instead to provide for a weekly tabulation of the population violation (if any) coupled with the amount of the sanction, were such sanction to be imposed—using as a baseline amount the $100.00 figure per inmate per day provided for in the addendum to the SCO3. The County should provide this report to the special masters on a weekly basis. The masters may make any appropriate recommendation to the Court upon receipt of this information.

As to the question of what to do with the sanction money imposed by the court today, the masters have recommended that, pursuant to ¶ 22 of the consent order and the terms of this court's prior decisions, the fine money shall be paid into the Bail Fund. Here, however, the plaintiffs have also agreed that the sanction can be put to use by "having a special master or monitor require the County to arrange for the *actual provision of programs or services or of construction necessary to achieve compliance.*" SCO3 p. 18 (emphasis added). The

Court of Appeals for the Third Circuit has approved such remedial measures. *See Wecht*, 754 F.2d at 120; *see also Owens–El v. Robinson*, 442 F.Supp. 1368 (W.D.Pa. 1978).

Pursuant to my authority therefore to fashion an appropriate remedy and drawing from the parties' own agreement, I recognize that the bail fund is one such use and that, moreover, to facilitate both the operation of the bail fund and bail proceedings in general, certain expenditures may be required. I direct my masters to provide a report of what would further be necessary for an effective bail program.

Mindful of the United States Constitution's requirements that individuals not be housed in unconstitutional surroundings and the legitimate penalogical objectives of the County defendants as well as the protection and well-being of County residents, I am reluctant to order that all of the fine money be placed in a bail fund. I believe that a more constructive, far-sighted plan may be capable of formulation. I, therefore, order the parties to submit alternative proposals to the special masters within two weeks time, bearing in mind that ¶ 22(a) warrants that a special master or monitor may require the County to arrange for the actual provisions of programs or services or of construction necessary to achieve compliance.

In *Morales Feliciano v. Hernandez Colon*, Judge Perez–Giminez wrote about the role of the federal judiciary when it is called upon to assess prison conditions and ultimately finds itself in the position of imposing sanctions and constructing remedies. His words refer to the Commonwealth of Puerto Rico and its status *vis a vis* the federal government, but his words hold equal meaning for to the people and the state of New Jersey. He explained:

> Finally, as for the effect of compliance on the sovereignty of the commonwealth and the integrity of federalist relations, there must be no confusion as to the nature of the obligation in this case. Nothing in this court's actions interferes with the efforts of the commonwealth as to the enforcement of the criminal laws of Puerto Rico, or any other policy decisions of that entity. *The Commonwealth is being required to do only one thing in this action: adhere to the mandates of the United States Constitution ...* The conditions of confinement must meet constitutional standards. The application of this principle of constitutional government to Puerto Rico scarcely interferes with the prerogatives of the commonwealth.

*Ibid.* at p. 635 (emphasis in original).

■ Let me turn now to the alleged violations of the recreation portion of SCO3. Defendants stated that their failure to comply with the recreation requirements is due to at least three factors—the fact that security concerns prevent them from installing the tier level equipment, the need to convert the upstairs gym into a dormitory, and the lack of a third elevator in which to transport inmates to and from the gym.

As to the security concerns, the County states that it requires the use of a welder before it can install the equipment. The County alleges that there is only one welder they can hire and he, unfortunately, has been unavailable. Hence, the argument goes, it cannot perform its necessary obligations.

With respect to the area of recreation, this Court is quite appreciative of defendants' real security concerns. However, this Court is also concerned with both the plaintiffs' constitutional rights and with the unwavering duty of all parties to obey the law. In my opinion of May 10th, I gave the County, in essence, a grace period to allow them to implement an effective recreational program; one which gives inmates their mandated hour of daily exercise and included the installation of then newly-purchased equipment. I also gave the County until June 1, 1989 to establish a weekly monitoring system. The grace period has expired. I believe, as the Masters suggest, that had the County been more serious about meeting court-ordered obligations they would have found another welder to perform the work necessary to insure a safe installation of the supplemental equipment and they

would have built this sorely-needed third elevator.

Moreover, the County's suggestion that "there is ample space for inmates in the common areas for such exercise as push-ups, sit-ups and even walking" (p. 22) is, with all due respect, misplaced. Defendants must remember that they are in violation of a consent judgment; the recreational requirements have been agreed upon by the parties and ordered by the court. I respectfully suggest that the fact that inmates can "even walk" around the common areas does not supplant the judgment of this Court and the parties that all inmates be provided with one hour of recreation time per day.[2]

As noted earlier, the Masters directed the parties to provide their calculations of the appropriate numbers for recreation violations. The defendants failed to provide any such numbers. Plaintiff has provided this Court with figures. Accordingly, defendants' silence can only be interpreted as acquiescence in plaintiff's numbers or as disregard for the orders of this Court.

Plaintiffs, who have provided this Court with a figure of 76,069 for the number of inmates denied their daily hour of recreation, ask this Court to impose a fine of $100.00 a day per inmate who was so deprived. *See* attached monthly breakdowns (Addendum 3). At this time, the Court is reluctant to impose a recreation fine that exceeds the population fines. Since it is the first time such a fine has been imposed (despite, however, the fact that the County has been on clear notice of this aspect of the SCO), the Court will impose a fine of $20.00 per day per inmate, which works out to $1,521,380.00.

Plaintiffs have asked that a portion of the fine be compensatory in nature and thus paid to the plaintiff class. The Court believes that a compensatory fine is unnecessary and that strict compliance with the recreational requirements should be sufficient.

Plaintiffs also ask that a separate fine be imposed for the failure to install the supplemental equipment. This Court prefers to treat defendants' failure to provide the necessary recreational opportunities and facilities as a package. The $20.00 fine shall cover all aspects of defendants' non-compliance, including their failure to provide the weekly reports. Special emphasis was placed on the need for those reports in my May 10th opinion. I trust that it is not necessary to repeat the need for such reports here.

The Masters suggest a self-executing fine system with regard to the recreation situation. While I will not impose a self-triggering fine system, I would ask that the weekly reports of recreational figures that already were to be provided now include a calculation as to what fine would be in order if any violation of the recreation order were to occur, based on the Court's figure of $20.00 per day per inmate. Once again, upon receipt of these figures, the Masters may make any appropriate recommendation to the Court. Let there be no misunderstanding, the County is to provide the Masters with these reports on a weekly basis.

The question next arises as to what should be done with the money collected in connection with the County's violation of the recreation provisions of SCO3. The Masters suggest that a Recreation Fund be established and I think that suggestion is a good one. Pursuant to the terms of SCO3, ¶ 22a, any monies paid into the Court may be used "to arrange for the provision of programs or services or of construction necessary to achieve compliance." The Masters have suggested that an expert be designated to study all aspect of the provision of recreation at the jail and prepare a report on how the money can best be spent to bring the jail into compliance. The Special Masters suggest that upon completion of the expert's report, the Masters will hold a hearing and make recommendations to this Court. I am willing to consider the proposition that the Recreation Fund be

---

**2.** In this regard, *see also* N.J.A.C. § 10A:17–8.6 which provides in subsection b that, "inmates shall be given an opportunity to participate in a minimum of one hour of active recreation per day."

spent on hiring an expert whose recommendations will then be heard by the Masters and, where appropriate, implemented. It seems that were plaintiffs and defendants to stipulate as to what needed to be done, how best to do it and in what time period it should be done, the money could go directly towards the provision of services.

At this time, I order that the fine be placed into an interest bearing account entitled the "Recreation Fund" and that the parties get back to this Court within 14 days from the entry of the attached order informing the Court as to whether or not an expert shall be necessary. If they answer this question negatively, then I direct that the parties present the Court with a detailed program and timetable for implementing the full recreation system at the jail.

Before closing, let me recapitulate. The aggregate fine money should be placed in an interest bearing account to be designated by the Court. The recreation fund should be maintained separately and also in an interest bearing account to be designated by the Court. The money that the County is to be fined as a contempt sanction for the repeated population violations is to be utilized for the bail fund both directly and as may be necessary to supplement the effective operation of bail and relevant monitoring systems in the Essex County Jail. The contempt fine money will also be used on such other projects as are in keeping with ¶ 22(a) of the SCO3, projects which deal not only with bailing out individuals, but which are also designed to keep those individuals in the Essex County facilities, something which can only be done if the facilities meet and maintain the requisite constitutional standards. The fine money shall be deposited with the Court no later than 14 days from the date of entry of this order and the parties' suggestions as to the utilization of such monies are to be presented to the Special Masters in two weeks from the entry of the attached order so that the Masters may take whatever steps necessary prior to recommending a course of action to me.

In so ruling as I have today, I am cognizant that some may perceive that this Courts' action may represent an unwelcome and unwarranted intrusion into the functions that properly belong to the legislative and the executive branches of state and county government. But, in representing to the Court that they are literally unable to bring the jail into compliance with constitutional standards, the County defendants have foisted onto this court the necessary role of insuring that the Constitution is upheld. What the County defendants have done is to blatantly pass the buck to this court by doing nothing but make empty promises. Perhaps, the County defendants' hope that the taxpayers of Essex County will perceive defendants as clothed in pristine raiment while venting their spleen on the judiciary. While this may be viewed by some as good politics, it is sadly an abdication of the County defendants' responsibilities to the citizenry and to the Court. In ruling as I have today, it is my hope that this decision will provoke constructive action rather than rhetoric.

I believe that concludes the issues between plaintiff and County defendants. I am pleased that a stipulation has been reached between the State and the plaintiffs and I will order the stipulation filed as of today.

## CONCLUSION

For the reasons stated above, the County defendants are hereby fined $1,476,800.00 for the overall population violations and $428,500 for the violations of specific housing caps. The County defendants are fined $1,521,380.00 for their failure to provide each inmate with one hour of exercise a day and to install the tier level equipment. The fine monies, which are to be segregated into two accounts—one for population sanctions and remedies, the other for recreation sanctions and remedies—are to be deposited within 14 days of the entry of the within Order. The parties should also submit their proposals to the Masters regarding alternatives to the bail fund and the necessity of and potential uses for the recreation improvement fund within the same period of time.

## ADDENDUM 1

The record reflects the following number of inmates over cap within the overall population for June, July, August, September, and part of September and October, 1989 as follows:

|  | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER |
|---|---|---|---|---|---|
| 1. | 39 | 24 | 113 | 158 | 200 |
| 2. | 42 | 24 | 118 | 157 | 202 |
| 3. | 16 | 22 | 121 | 169 | 200 |
| 4. | 20 | 69 | 121 | 166 | 183 |
| 5. | 13 | 80 | 102 | 194 | 149 |
| 6. | 23 | 76 | 102 | 187 | 109 |
| 7. | 26 | 78 | 102 | 181 | 94 |
| 8. | 33 | 53 | 93 | 194 | 108 |
| 9. | 28 | 66 | 114 | 159 | 104 |
| 10. | 24 | 63 | 120 | 179 | 123 |
| 11. | 29 | 78 | 139 | 167 | 48 |
| 12. | 25 | 65 | 102 | 197 | 41 |
| 13. | 42 | 83 | 109 | 179 | 42 |
| 14. | 43 | 72 | 119 | 177 |  |
| 15. | 36 | 53 | 117 | 191 |  |
| 16. | 28 | 67 | 132 |  |  |
| 17. | 7 | 61 | 129 |  |  |
| 18. | 25 | 100 | 139 | 181 |  |
| 19. | 26 | 112 | 125 | 191 |  |
| 20. | 49 | 105 | 124 | 195 |  |
| 21. | 59 | 103 | 124 | 193 |  |
| 22. | 53 | 63 | 154 | 196 |  |
| 23. | 70 | 90 | 174 |  |  |
| 24. | 42 | 84 | 178 |  |  |
| 25. | 59 | 84 | 156 | 219 |  |
| 26. | 62 | 85 | 136 | 221 |  |
| 27. | 77 | 84 | 147 | 226 |  |
| 28. | 78 | 94 | 148 | 237 |  |
| 29. | 77 | 68 | 135 | 226 |  |
| 30. | 32 | 84 | 167 |  |  |
| 31. |  | 80 | 180 |  |  |

## ADDENDUM 2

The numbers for the population over cap per dormitory area are as follows:

ESSEX COUNTY JAIL—1989 Tier Man Dorm Data

CAPACITY IS 6 INMATES

|  | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER |
|---|---|---|---|---|---|
| 1. | 2 | 2 | 2 | 2 | 5 |
| 2. | 1 | 2 | 2 | 2 | 5 |
| 3. | 1 | 3 | 2 | 2 | 4 |
| 4. | 2 | 2 | 3 | 2 | 4 |
| 5. | 2 | 2 | 2 | 2 | 4 |
| 6. | 2 | 2 |  | 2 | 4 |
| 7. | 2 | 1 | 2 | 2 | 4 |
| 8. | 3 | 2 | 2 | 3 | 4 |
| 9. | 3 | 2 | 2 | 4 | 4 |
| 10. | 1 | 2 | 2 | 3 | 4 |
| 11. | 1 | 2 | 2 | 3 | 4 |
| 12. | 1 | 1 | 2 | 3 | 4 |
| 13. | 1 | 1 | 2 | 3 | 4 |

|       | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER |
|-------|------|------|--------|-----------|---------|
| 14.   | 1    | 1    | 2      |           |         |
| 15.   |      | 3    | 2      |           |         |
| 16.   |      | 3    | 3      |           |         |
| 17.   |      | 3    | 2      |           |         |
| 18.   |      | 2    | 2      |           |         |
| 19.   |      | 2    | 2      |           |         |
| 20.   |      | 2    | 2      |           |         |
| 21.   |      | 1    | 2      |           |         |
| 22.   |      | 1    | 2      |           |         |
| 23.   |      | 1    | 2      |           |         |
| 24.   |      | 1    | 2      |           |         |
| 25.   |      | 1    | 12     |           |         |
| 26.   |      | 1    | 2      |           |         |
| 27.   |      | 3    | 2      |           |         |
| 28.   | 2    | 3    | 2      |           |         |
| 29.   | 2    | 2    | 2      |           |         |
| 30.   | 1    | 2    | 2      |           |         |
| 31.   |      | 2    | 2      |           |         |
| TOTAL | 28   | 58   | 72     | 33        | 54      |

### ESSEX COUNTY JAIL—1989 2nd Floor Dorm Data
### CAPACITY IS 98 INMATES

|       | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER |
|-------|------|------|--------|-----------|---------|
| 1.    | 34   | 16   | 30     | 25        | 35      |
| 2.    | 32   | 10   | 32     | 29        | 36      |
| 3.    | 31   | 4    | 31     | 31        | 38      |
| 4.    | 30   | 20   | 30     | 29        | 22      |
| 5.    | 28   | 25   | 16     | 32        | 0       |
| 6.    | 29   | 15   | 21     | 32        | 3       |
| 7.    | 29   | 14   | 21     | 26        | 4       |
| 8.    | 30   | 9    | 20     | 30        | 6       |
| 9.    | 25   | 14   | 32     | 22        | 18      |
| 10.   | 32   | 11   | 32     | 25        | 32      |
| 11.   | 31   | 21   | 32     | 19        | 29      |
| 12.   | 30   | 11   | 29     | 30        | 30      |
| 13.   | 30   | 23   | 19     | 24        | 21      |
| 14.   | 24   | 15   | 23     |           |         |
| 15.   | 28   | 17   | 19     |           |         |
| 16.   | 24   | 18   | 22     |           |         |
| 17.   | 28   | 13   | 22     |           |         |
| 18.   | 29   | 28   | 30     |           |         |
| 19.   | 28   | 29   | 29     |           |         |
| 20.   | 30   | 27   | 25     |           |         |
| 21.   | 22   | 21   | 18     |           |         |
| 22.   | 28   | 13   | 12     |           |         |
| 23.   | 17   | 23   | 28     |           |         |
| 24.   | 17   | 19   | 30     |           |         |
| 25.   | 16   | 13   | 25     |           |         |
| 26.   | 15   | 19   | 25     |           |         |
| 27.   | 25   | 29   | 28     |           |         |
| 28.   | 22   | 32   | 29     |           |         |
| 29.   | 23   | 32   | 21     |           |         |
| 30.   | 17   | 30   | 32     |           |         |
| 31.   |      | 27   | 31     |           |         |
| TOTAL | 784  | 598  | 794    | 354       | 274     |

ESSEX COUNTY JAIL—1989 Civil Area Dorm Data
CAPACITY IS 10 INMATES

| | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER |
|---|---|---|---|---|---|
| 1. | 20 | 24 | 7 | 11 | 10 |
| 2. | 12 | 23 | 3 | 11 | 10 |
| 3. | 13 | 24 | 2 | 11 | 13 |
| 4. | 12 | 23 | 1 | 11 | 13 |
| 5. | 11 | 22 | 5 | 11 | 11 |
| 6. | 13 | 24 | 5 | 11 | 12 |
| 7. | 13 | 23 | 5 | 12 | 10 |
| 8. | 15 | 23 | 7 | 11 | 10 |
| 9. | 18 | 22 | 7 | 13 | 14 |
| 10. | 17 | 21 | 9 | 13 | 14 |
| 11. | 19 | 23 | 14 | 14 | 7 |
| 12. | 19 | 17 | 10 | 17 | 10 |
| 13. | 19 | 18 | 13 | 19 | 12 |
| 14. | 15 | 20 | 13 | . | |
| 15. | 15 | 19 | 12 | | |
| 16. | 12 | 19 | 10 | | |
| 17. | 13 | 23 | 13 | | |
| 18. | 14 | 25 | 13 | | |
| 19. | 14 | 24 | 12 | | |
| 20. | 16 | 24 | 10 | | |
| 21. | 18 | 17 | 10 | | |
| 22. | 21 | 19 | 14 | | |
| 23. | 25 | 20 | 9 | | |
| 24. | 24 | 20 | 10 | | |
| 25. | 25 | 18 | 12 | | |
| 26. | 25 | 5 | 15 | | |
| 27. | 23 | 6 | 13 | | |
| 28. | 21 | 9 | 18 | | |
| 29. | 23 | 5 | 13 | | |
| 30. | 25 | 7 | 15 | | |
| 31. | | 8 | 13 | | |
| TOTAL | 530 | 575 | 313 | 165 | 146 |

## ESSEX COUNTY JAIL—RECREATION DATA FOR 1989
### OPPORTUNITY BY HOUSING UNIT FOR ACCESS TO GYM–UP OR GYM–DOWN

| DATE | FLOORS */ 2N | 2S | 3N | 3S | 4N | 4S | 6N | 6S | 8N | 8S | 10N | 10S | 12C | 12D | 12Q | 12T | 12M | Rec Opp | Tot Pop | No Rec Opp |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| August 1 | 60 | 59 | | | | | | | | | | | | | | | 17 | 136 / 136 | 708 | 572 |
| 2 | | | | 10 | | | 60 | 59 | | | | | | | | | | 129 / 129 | 724 | 595 |
| 3 | | | | | | | | | | | | 53 | | | | | | 53 / 53 | 727 | 674 |
| 4 | | | | | | | | | | | | | | | | | | 0 | 727 | 727 |
| 5 | | | | | | | | | | | | | | | | | | 0 | 708 | 708 |
| 6 | | | | | | | | | | | | | | | | | | 0 | 708 | 708 |
| 7 | | | | | 53 | 53 | | | | | | | | | | | | 106 / 106 | 708 | 602 |
| 8 | | 59 | | | | | | | | 53 | | | | | | | | 112 / 112 | 708 | 596 |
| 9 | | | | | | | 53 | 53 | | | | | | | | | | 106 / 106 | 720 | 614 |
| 10 | | | | | | | | | | | 53 | 53 | | | | | | 106 / 106 | 726 | 620 |
| 11 | | | | | | | | | | | | | | | | | | 0 | 745 | 745 |
| 12 | | | | | | | | | | | | | | | | | | 0 | 708 | 708 |
| 13 | | | | | | | | | | | | | | | | | | 0 | 715 | 715 |
| 14 | | | | | 54 | 54 | | | | | | | | | | | | 108 / 108 | 725 | 617 |
| 15 | 58 | 59 | | | | | | | | | | | | | | | | 117 / 117 | 723 | 606 |
| 16 | | | | | | | 60 | 61 | | | | | | | | | | 121 / 121 | 738 | 617 |
| 17 | | | | | | | | | | | 57 | | | | | | | 57 / 57 | 735 | 678 |
| 18 | | | | | | | | | 60 | 61 | | | | | | | | 121 / 121 | 745 | 624 |
| 19 | | | | | | | | | | | | | | | | | | 0 | 731 | 731 |
| 20 | | | | | | | | | | | | | | | | | | 0 | 730 | 730 |
| 21 | | | | | | | | | | | | | | | | | | 0 | 724 | 724 |
| 22 | 55 | 55 | | | | | | | | | | | | | | | | 110 / 110 | 760 | 650 |
| 23 | | | | | | | 61 | | | | | | | | | | | 61 / 61 | 780 | 719 |
| 24 | | | | | | | | | | | 60 | 60 | | | | | | 120 / 120 | 784 | 664 |
| 25 | | | | | | | | | 61 | 62 | | | | | | | | 123 / 123 | 762 | 639 |
| 26 | | | | | | | | | | | | | | | | | | 0 | 742 | 742 |
| 27 | | | | | | | | | | | | | | | | | | 0 | 753 | 753 |
| 28 | | | | | | | | | | | | | | | | | | 0 | 754 | 754 |

| DATE | FLOORS */ | | | | | | | | | | | | | | | | | | Rec Opp | Tot Pop | No Rec Opp |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2N | 2S | 3N | 3S | 4N | 4S | 6N | 6S | 8N | 8S | 10N | 10S | 12C | 12D | 12Q | 12T | 12M | | | |
| 29 | | | | | | | | | | | | | | | | | | | 0 | | |
| | | | | | | | | | | | | | | | | | | | 0 | 741 | 741 |
| 30 | | | | | | | 60 | 60 | | | | | | | | | | | 120 | | |
| | | | | | | | | | | | | | | | | | | | 120 | 773 | 653 |
| 31 | | | | | | | | | | | 55 | | | | | | | | 55 | | |
| | | | | | | | | | | | | | | | | | | | 55 | 786 | 731 |
| Month Total | | | | | | | | | | | | | | | | | | | | | 20,957 |

* Key for 12th Floor:  12C = Civil;  12D = Detention;  12Q = Quiet;  12T = Tierman  Dorm;  12M = Med.

## 556

ADDENDUM 3

### ESSEX COUNTY JAIL—RECREATION DATA FOR 1989
### OPPORTUNITY BY HOUSING UNIT FOR ACCESS TO GYM-UP OR GYM-DOWN

| DATE | FLOORS*/ | | | | | | | | | | | | | | | | | Rec Opp | Tot Pop | No Rec Opp |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| June | 2N | 2S | 3N | 3S | 4N | 4S | 6N | 6S | 8N | 8S | 10N | 10S | 12C | 12D | 12Q | 12T | 12M | | | |
| 1 | | | | | | | | 54 | 54 | | 54 | 53 | | | | | | 215 / 215 | 643 | 428 |
| 2 | | 65 | | 54 | | | | | 54 | 54 | | | | | | | | 227 / 227 | 646 | 419 |
| 3 | | | | | | | | | 54 | 54 | 52 | 52 | | 8 | | | | 220 / 220 | 620 | 400 |
| 4 | 64 | 64 | | 53 | 53 | 53 | 53 | | | | | | | | | | | 340 / 340 | 624 | 284 |
| 5 | 63 | 63 | 11 | 53 | 53 | | | | | | | 51 | | | | | | 294 / 294 | 617 | 323 |
| 6 | 64 | 63 | 12 | | | | 54 | | | 54 | | | | | | | 11 | 258 / 258 | 627 | 369 |
| 7 | | | 15 | | | 51 | 54 | 53 | | | | 53 | | | 2 | | | 228 / 228 | 630 | 402 |
| 8 | | | 12 | | | | 56 | | | 54 | 54 | 53 | | | | | | 229 / 229 | 637 | 408 |
| 9 | | 62 | | 53 | | | | | 54 | 54 | | | | | | | | 223 / 223 | 632 | 409 |
| 10 | | | 13 | | | | | | 54 | 54 | 50 | 49 | | | 3 | | | 223 / 223 | 628 | 405 |
| 11 | 65 | 64 | 13 | 53 | 52 | 53 | 53 | | | | | | | | | | | 353 / 353 | 633 | 280 |
| 12 | | 64 | 12 | | 53 | | | | | | | 50 | | | | | | 179 / 179 | 629 | 450 |
| 13 | 64 | 64 | 16 | | | 53 | | | | 54 | | | | | | | 15 | 266 / 266 | 646 | 380 |
| 14 | | | 14 | 13 | | 53 | 60 | 59 | | | 54 | | | | | | | 253 / 253 | 647 | 394 |
| 15 | | | 14 | | | | | 59 | 54 | | 54 | 53 | | | 8 | | | 242 / 242 | 642 | 400 |
| 16 | 61 | | | 53 | | | | | 54 | 53 | | | | | | | | 221 / 221 | 634 | 413 |
| 17 | | | | | | | | | 51 | 51 | 49 | 48 | | | 3 | 4 | | 206 / 206 | 613 | 407 |
| 18 | | | | | | | | | | | | | | | | | | 0 / 0 | 631 | 631 |
| 19 | | | | 53 | 53 | | | | | | | | | | | | | 106 / 106 | 632 | 526 |
| 20 | 64 | 64 | | | | | | | | | | | | | | | | 128 / 128 | 655 | 527 |
| 21 | | | | | | | 60 | 60 | | | | | | | | | | 120 / 120 | 665 | 545 |
| 22 | | | | | | | | | | | 54 | 53 | | | | | | 107 / 107 | 659 | 552 |
| 23 | | | | | | | | | 66 | | | | | | | | | 66 / 66 | 676 | 610 |
| 24 | | | | | | | | | | | | | | | | | | 0 / 0 | 648 | 648 |
| 25 | | | | | | | | | | | | | | | | | | 0 / 0 | 665 | 665 |
| 26 | | | 15 | | 52 | 51 | | | | | | | | | | | | 118 / 118 | 668 | 550 |
| 27 | 62 | 61 | | | | | | | | | | | | | | | 13 | 136 / 136 | 683 | 547 |

| DATE | 2N | 2S | 3N | 3S | 4N | 4S | 6N | 6S | 8N | 8S | 10N | 10S | 12C | 12D | 12Q | 12T | 12M | Rec Opp | Tot Pop | No Rec Opp |
|------|----|----|----|----|----|----|----|----|----|----|-----|-----|-----|-----|-----|-----|-----|---------|---------|------------|
| FLOORS */ | | | | | | | | | | | | | | | | | | | | |
| 28 | | | | | | | 52 | 54 | | | | | | 9 | | | | 115 115 | 684 | 569 |
| 29 | | | | | | | | | | | 52 | | | | | | | 52 52 | 683 | 631 |
| 30 | | | | | | | | | 48 | | | | | | | | | 48 48 | 638 | 590 |
| Month Total | | | | | | | | | | | | | | | | | | | | 14,162 |

* Key for 12th Floor: 12C=Civil; 12D=Detention; 12Q=Quiet; 12T=Tierman Dorm; 12M=Med.

### ESSEX COUNTY JAIL—RECREATION DATA FOR 1989
### OPPORTUNITY BY HOUSING UNIT FOR ACCESS TO GYM-UP OR GYM-DOWN

| DATE | 2N | 2S | 3N | 3S | 4N | 4S | 6N | 6S | 8N | 8S | 10N | 10S | 12C | 12D | 12Q | 12T | 12M | Rec Opp | Tot Pop | No Rec Opp |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **July** | | | | | | | | | | | | | | | | | | | | |
| 1 | | | | | | | | | | | | | | | | | | 0 | 630 | 630 |
| 2 | | | | | | | | | | | | | | | | | | 0 | 630 | 630 |
| 3 | | | | | | | | | | | | | | | | | | 0 | 628 | 628 |
| 4 | | | | | | | | | | | | | | | | | | 0 | 675 | 675 |
| 5 | | | | | | | | | | | | | | | | | | 0 | 686 | 686 |
| 6 | | | | | | | | | | | | | | | | | | 0 | 682 | 682 |
| 7 | | | | | | | | | | | | | | | | | | 0 | 684 | 684 |
| 8 | | | | | | | | | | | | | | | | | | 0 | 659 | 659 |
| 9 | | | | | | | | | | | | | | | | | | 0 | 672 | 672 |
| 10 | | | | 16 | 53 | 53 | | | | | | | | | | | | 122 | 669 | 547 |
| 11 | | | | | | | | | | | | | | | | | | 0 | 684 | 684 |
| 12 | | | | | | | | | | | | | | | | | | 0 | 671 | 671 |
| 13 | | | | | | | | | | | | | | | | | | 0 | 689 | 689 |
| 14 | | | | | | | | 53 | | | | | | | | | | 53 | 678 | 625 |
| 15 | | | | | | | | | | | | | | | | | | 0 | 659 | 659 |
| 16 | | | | | | | | | | | | | | | | | | 0 | 673 | 673 |
| 17 | | | 10 | | | | | | | | | | | | | | | 10 | 667 | 657 |
| 18 | | 63 | 63 | | | | | | | | | | | | | | 14 | 140 | 706 | 566 |
| 19 | | | 10 | | | | 53 | 53 | | | | | | | | | | 116 | 718 | 602 |
| 20 | | | | | | | | | | | 52 | 51 | | | 8 | | | 111 | 711 | 600 |
| 21 | | | | | | | | 54 | 54 | | | | | | | | | 108 | 709 | 601 |
| 22 | | | | | | | | | | | | | | | | | | 0 | 669 | 669 |
| 23 | | | | | | | | | | | | | | | | | | 0 | 696 | 696 |
| 24 | | | 10 | | 53 | 52 | | | | | | | | | | | | 115 | 690 | 575 |
| 25 | 56 | 55 | | | | | | | | | | | | | | 7 | | 118 | 690 | 572 |
| 26 | | | 10 | | 53 | 53 | | | | | | | | | | | | 116 | 691 | 575 |
| 27 | | | | | | | | | | | 53 | 53 | | | | | | 106 | 690 | 584 |
| 28 | | | | | | | | 5454 | | | | | | | | | | 108 | 700 | 592 |

| DATE | 2N | 2S | 3N | 3S | 4N | 4S | 6N | 6S | 8N | 8S | 10N | 10S | 12C | 12D | 12Q | 12T | 12M | Rec Opp | Tot Pop | No Rec Opp |
|------|----|----|----|----|----|----|----|----|----|----|-----|-----|-----|-----|-----|-----|-----|---------|---------|------------|
| 29 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | 0<br>0 | 674 | 674 |
| 30 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | 0<br>0 | 690 | 690 |
| 31 |  |  | 10 |  | 53 | 53 |  |  |  |  |  |  |  |  |  |  |  | 116<br>116 | 686 | 570 |
| Month Total |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | 19,717 |

\* Key for 12th Floor: 12C = Civil; 12D = Detention; 12Q = Quiet; 12T = Tierman Dorm; 12M = Med.

ESSEX COUNTY JAIL—RECREATION DATA FOR 1989
OPPORTUNITY BY HOUSING UNIT FOR ACCESS TO GYM-UP OR GYM-DOWN

| DATE | 2N | 2S | 3N | 3S | 4N | 4S | 6N | 6S | 8N | 8S | 10N | 10S | 12C | 12D | 12Q | 12T | 12M | Rec Opp | Tot Pop | No Rec Opp |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **September** | | | | | | | | | | | | | | | | | | | | |
| 1 | | | | | | | | 59 | | 59 | | | | | | | | 118 / 118 | 764 | 646 |
| 2 | | | | | | | | | | | | | | | | | | 0 / 0 | 763 | 763 |
| 3 | | | | | | | | | | | | | | | | | | 0 | 775 | 775 |
| 4 | | | | | 57 | 58 | | | | | | | | | | | | 115 / 115 | 772 | 657 |
| 5 | 65 | 65 | | | | | | | | | | | | | | | | 130 / 130 | 800 | 670 |
| 6 | | | | | | | 63 | 63 | | | | | | | | | | 126 / 126 | 793 | 667 |
| 7 | | | | | | | | | | | 62 | 63 | | | | | | 125 / 125 | 787 | 662 |
| 8 | | | | | | | | 60 | | 59 | | | | | | | | 119 / 119 | 800 | 681 |
| 9 | | | | | | | | | | | | | | | | | | 0 | 765 | 765 |
| 10 | | | | | | | | | | | | | | | | | | 0 | 785 | 785 |
| 11 | | | | | | 58 | | | | | | | | | | 9 | | 67 / 67 | 773 | 706 |
| 12 | 59 | 59 | 17 | | | | | | | | | | | | | | | 135 / 135 | 803 | 668 |
| 13 | | | | | | | 61 | 61 | | | | | | | | | | 122 / 122 | 785 | 663 |
| 14 | | | | | | | | | | | 59 | 59 | | | | | | 118 / 118 | 783 | 665 |
| 15 | | | | | | | | 63 | | | | | | | | | | 63 / 63 | 797 | 734 |
| 16 | | | | | | | | | | | | | | | | | | 0 / 0 | 757 | 757 |
| 17 | | | | | | | | | | | | | | | | | | 0 / 0 | 776 | 776 |
| 18 | | | | | 60 | 59 | | | | | | | | | | | | 119 / 119 | 775 | 656 |
| 19 | 63 | 62 | | | | | | | | | | | | | | | | 125 / 125 | 785 | 660 |
| 20 | | | | | | | 63 | 62 | | | | | | | | | | 125 / 125 | 789 | 664 |
| 21 | | | | | | | | 6363 | | | | | | | | | | 126 / 126 | 787 | 661 |
| 22 | | | | | | | | 65 | | 64 | | | | | | | | 129 / 129 | 790 | 661 |
| 23 | | | | | | | | | | | | | | | | | | 0 | 774 | 774 |
| 24 | | | | | | | | | | | | | | | | | | 0 | 816 | 816 |
| 25 | | | | | 65 | 65 | | | | | | | | | | | | 130 / 130 | 813 | 683 |
| 26 | 63 | 63 | | | | | | | | | | | | | | | | 126 / 126 | 815 | 689 |
| 27 | | | | | | | 65 | 65 | | | | | | | | | | 130 / 130 | 820 | 690 |
| 28 | | | | | | | | | | | 65 | 65 | | | | | | 130 / 130 | 831 | 701 |

| DATE | 2N | 2S | 3N | 3S | 4N | 4S | 6N | 6S | 8N | 8S | 10N | 10S | 12C | 12D | 12Q | 12T | 12M | Rec Opp | Tot Pop | No Rec Opp |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 29 | | | | | | | | 67 | | | | | | | | | | 67 | | |
| | | | | | | | | | | | | | | | | | | 67 | 820 | 753 |
| 30 | | | | | | | | | | | | | | | | | | 0 | | |
| | | | | | | | | | | | | | | | | | | 0 | 785 | 785 |

FLOORS */

Month Total 21,233

Grand Total—June 1, 1989 to Sept. 30, 1989     76,069

* Key for 12th Floor: 12C–Civil; 12D–Detention; 12Q–Quiet; 12T–Tierman Dorm; 12M–Med.